UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEVEN M. HANCOCK,

      Plaintiff,

v.                                   Case No.:  5:20-cv-321-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Steven M. Hancock seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     **Social Security Act Eligibility, Standard of Review, Procedural
History, and the ALJ's Decision**

A.     **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can
be expected to result in death, or which has lasted or can be expected to last for a
continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A),
1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be
severe, making the claimant unable to do his previous work, or any other substantial
gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by
substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a
scintilla and is such relevant evidence as a reasonable person would accept as
adequate to support a conclusion. Even if the evidence preponderated against the
Commissioner's findings, we must affirm if the decision reached is supported by
substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004).
In conducting this review, this Court may not reweigh the evidence or substitute its
judgment for that of the ALJ, but must consider the evidence as a whole, taking into
account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on July 5, 2016 and for supplemental security income benefits on July 15, 2016, alleging disability beginning February 1, 2014.[1] (Tr. 102, 103, 233-43). The applications were denied initially on October 18, 2016, and upon reconsideration on January 24, 2017. (Tr. 102, 103, 144, 145). Plaintiff requested a hearing and on October 18, 2018, a hearing was held before Administrative Law Judge Jeffrey A. Ferguson. (Tr. 30-71). On April 29, 2019, the ALJ entered a decision finding Plaintiff not under a disability from February 1, 2014, through the date of the decision. (Tr. 10-22).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on May 18, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on July 13, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

---

[1] The parties and the ALJ both refer to the alleged onset date as February 1, 2014. (Tr. 13, Doc. 22, p.2; Doc. 23, p. 1). However, at the hearing, it appears that the ALJ approved a request to amend the onset date to April 17, 2015. (Tr. 37). The Court determines that using either the alleged onset date or amended alleged onset date will not affect its analysis of the issues raised.

**D.     Summary of ALJ's Decision**

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. (Tr. 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disk disease of cervical and lumbar spine; migraine; post-traumatic stress disorder (PTSD); major depressive disorder; and anxiety disorder." (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). The residual functional capacity is quantified function by function as follows: This individual has the capacity to perform light work as defined in the regulations, except this individual can lift and carry no more than 15 pounds occasionally; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch and crawl; can frequently finger and feel with his right dominant upper extremity; can never be exposed to loud or very loud noise; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation and

work place hazards such as moving machinery, moving
mechanical parts and unprotected heights; can understand
and remember simple instructions; can perform simple, routine and
repetitive tasks; can frequently interact with the general public
and coworkers; and can respond appropriately to infrequent
changes in work tasks and work routine.

(Tr. 14-15).

The ALJ found Plaintiff unable to perform any past relevant work as a painter,
meat clerk, meat cutter, or surveyor. (Tr. 20). At step five, the ALJ relied on the
testimony of a vocational expert to find that considering Plaintiff's age, education,
work experience, and RFC, there are jobs that existed in significant numbers in the
national economy that Plaintiff could perform. (Tr. 20-21). Specifically, the ALJ
found that Plaintiff could perform such occupations as:

(1)   parking lot cashier, DOT 211.462-010, light, unskilled, SVP 2

(2)   small parts assembler, DOT 706.684-022, light, unskilled SVP 2

(3)   toll collector, DOT 211.462-038, light unskilled, SVP 2

(Tr. 21). The ALJ concluded that Plaintiff had not been under a disability from
February 1, 2014, through the date of the decision. (Tr. 22).

## II.   Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ failed to apply the
correct legal standards to the opinions of Drs. Bradley, Rudmann, and Williams; and

(2) whether the ALJ failed to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Grace. The Court will address the issues in turn.

### A. Whether the ALJ failed to apply the correct legal standards to the opinions of Drs. Bradley, Rudmann, and Williams

Plaintiff argues that Drs. Bradley, Rudmann, and Williams opined that Plaintiff was more limited based on his mental impairments than the ALJ reflected in the RFC assessment. (Doc. 22, p. 10-15). Plaintiff also argues that the ALJ erred in failing to mention and weigh Dr. Bradley's opinion. (Doc. 22, p. 12).

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

Non-examining doctors' opinions do not constitute substantial evidence on which to base an administrative decision and are entitled to little weight when they contradict the opinions and findings of treating or examining physicians. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

Plaintiff argues that state agency non-examining psychologist, Heather Bradley, Ph.D., specifically opined, among other things, that Plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Doc. 22, p. 10-11 (citing Tr. 83, 98)). In the same vein, Plaintiff argues that state agency non-examining psychologist, Maurice Rudmann, Ph.D. provided the same opinion as Dr. Bradley's concerning Plaintiff's mental limitations. (Doc. 22, p. 11 (citing Tr. 115-16, 120-22, 134-35, 139-41)). Likewise, Plaintiff argues that non-examining consultant Aaron D. Williams, Psy.D., opined, among other things, that Plaintiff was moderately limited in his ability to interact with the public, supervisors, and co-workers, in his ability to respond appropriately to usual work situations and to changes in a routine work setting, and in his ability to adapt or

manage himself. (Doc. 22, p. 111-12 (citing Tr. 1397, 1399, 1403)). While the ALJ afforded great weight to Dr. Rudmann's opinion as to Plaintiff's assessed mental limitations and significant weight to Dr. William's opinion that Plaintiff's mental limitations do not meet the listing level of severity, Plaintiff argues the ALJ erred by failing to account for moderate limitations in his ability to accept instructions and respond appropriately to criticism from supervisors in the RFC as found by both of these medical sources. Plaintiff also argues the ALJ erred by failing to mention or weigh Dr. Bradley's opinion. (Doc. 22, p. 12).

Dr. Bradley reviewed the records and found that, among other things, Plaintiff had moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 83). Dr. Rudmann found Plaintiff had mild restrictions in understanding, remembering or applying information, moderate limitations in interacting with others and concentration, persistence, or maintaining pace, and no restrictions in adapting or managing oneself. (Tr. 134). He also included that Plaintiff was moderately limited in accepting instructions and responding appropriately to criticism from supervisors. (Tr. 121, 140). Drs. Bradley and Rudmann explained:

> Adverse reactions to stress, especially in social or public settings, will likely increase the claimant's risk for reacting ineffectively to the stress of extensive customer-service and/or frequent collaboration among employees as well as result in difficulties accepting/incorporating supervisory feedback/input appropriately. The claimant would be best

> served in a work like environment that de-emphasizes social
> interactions, makes modest demands on social skills, limits
> social encounters to brief interchanges on superficial levels,
> and provides firm supervision with very clear expectations.

(Tr. 83, 122).

Dr. Williams found Plaintiff had no limitations in understanding, remembering and carrying out instructions, had moderate limitations in interacting appropriately with the public, with supervisors, with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1396-97). In support of these moderate limitations, Dr. Williams cited Plaintiff presenting with episodes of anxiety and panic that impact functioning. (Tr. 1397). Dr. Williams also opined that Plaintiff's "difficulties with anxiety and panic/discomfort are suggestive of mild-moderate impairment in social interactions and self-management." (Tr. 1400). When prompted to identify the most that Plaintiff could still do in a work setting, Dr. Williams recommended Plaintiff would benefit from an updated psychological assessment and a drug and alcohol assessment to clarify the impact of long-term pain management treatment. (Tr. 1403).

While the ALJ did not mention Dr. Bradley's opinion, he afforded great weight to Dr. Rudmann's assessments of Plaintiff's mental limitations. (Tr. 19). He also gave significant weight to Dr. Williams assessment that Plaintiff's mental limitations do not meet the listing level severity. (Tr. 19). Based on the medical records and other evidence, the ALJ included a limitation in the RFC regarding

social interactions to: "frequently interact[ing] with the general public and coworkers; and can respond appropriately to infrequent changes in work tasks and work routine." (Tr. 15).

Plaintiff claims that the ALJ failed to account for Drs. Bradley, Rudmann, and Williams opinions that included moderate limitations in his ability to accept instructions and respond appropriately to criticism from supervisors. (Doc. 22, p. 13). Although Drs. Bradley, Rudmann, and Williams found Plaintiff moderately limited in interacting with supervisors, accepting instructions, or responding appropriately to criticism from supervisors, none of these doctors included any additional work-related limitations in theirs opinions regarding this limitation. Drs. Bradley and Rudmann opined that due to stress, Plaintiff may react ineffectively to customer-service or frequent collaboration among employees or accepting supervisory feedback, but then opined that Plaintiff would be best served in a work environment that de-emphasizes social interaction, makes modest demands on social skills, and limits social encounters. (Tr. 83, 122). Dr. Williams included no work-related limitations in his opinion. (Tr. 1403). In the decision, the ALJ included a limitation in the RFC of frequently interacting with the general public and co-workers and responding appropriately to infrequent changes in work tasks and routine. (Tr. 15). These limitations encompass and are consistent with Dr. Bradley's and Dr. Rudmann's limitations to a work environment that de-emphasizes social

interactions, makes modest demands on social skills, and limits social encounters. (Tr. 15). Thus, the Court finds the ALJ did not err in the RFC assessment.

Finally, although the ALJ may have erred in not mentioning and weighing Dr. Bradley's opinion, the error is harmless because the ALJ considered and weighed Dr. Rudmann's opinion, which mirrors Dr. Bradley's opinion. (Tr. 83, 122); *see Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("If the ALJ commits an error that does not affect the outcome, it's harmless and doesn't require reversal or remand." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). The Court finds the ALJ did not err in assessing the opinions of Drs. Rudmann and Williams or in Plaintiff's RFC assessment. The Court also finds that even if the ALJ erred in not assessing Dr. Bradley's opinion, the error is harmless.

### B.     Whether the ALJ failed to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Grace

Plaintiff argues that the ALJ failed to mention, consider, or weigh the October 19, 2018 opinion of John W. Grace, M.D., Plaintiff's treating psychiatrist. (Doc. 22, p. 16). Plaintiff claims that even though the ALJ considered Dr. Grace's January 2017 opinion, the October 2018 opinion concerns a different time period and the reasons the ALJ rejected Dr. Grace's January 2017 opinion are in large part due to the format of the form. (Doc. 22, p. 16).

Absent "good cause," the opinion of a treating physician must be given "substantial or considerable weight" *Williams v. Comm'r, Soc. Sec. Admin.*, 805 F.

App'x 692, 694 (11th Cir. 2020) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)); *see* 20 C.F.R. § 404.1527(c)(2) (noting that an ALJ must provide "good reasons" for the weight given to a treating source's opinion). "Good cause" exists where "(1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (cleaned up).

The ALJ considered Dr. Grace's January 2017 opinion, in which he assessed Plaintiff with marked restrictions of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and had repeated episodes of decompensation each of an extended duration. (Tr. 19, 1030). The ALJ noted that the form assessed Plaintiff with many extreme limitations including the mental inability to sustain any work activity on a reliable and sustained basis. (Tr. 19, 1030-31). The ALJ gave the opinion only some weight because the objective records and Plaintiff's functioning do not support it. (Tr. 19). The ALJ also found that the form was designed to give only "yes" or "no" answers and avoided any need for an explanation or narration as to the actual severity of the paragraph "B" criteria. (Tr. 19). The ALJ also noted that these extreme limitations are not supported by an October 2016 treatment note that showed Plaintiff reported that his mood was overall stable on his current medications and his mental status examination was unremarkable. (Tr. 19).

- 14 -

While it is true that the ALJ did not mention, consider, or weight the October 2018 opinion, the Court finds any error harmless. The October 2018 report consists of the following statement: "I have reviewed Steven's records since 1/2017. He remains severely impaired and unlikely to ever work again. He has tried a number of psychotherapeutic interventions and continues to work within his resources as best he can to return to functioning but I am not optimistic that he will ever again be able to work full time consistently." (Tr. 1378). In essence, the October 2018 opinion does not add any additional information or insight as to Plaintiff's condition.

Although Plaintiff does not contest the ALJ's findings as to the weight of the January 2017 opinion, the Court finds that the ALJ articulated good cause to afford this opinion only some weight. First, the ALJ found the opinion was not supported by the objective records and Plaintiff's functioning capabilities. (Tr. 19). Second, the structure of the form did not provide any reasoning or explanation as to the extreme limitations. (Tr. 19). Finally, the ALJ found the treatment notes did not support these extreme limitations. (Tr. 19). Notably, Plaintiff has cited no treatment notes from Dr. Grace that support these extreme limitations.

The ALJ articulated good reasons and good cause to discount Dr. Grace's January 2017 opinion and these same reasons apply to the October 2018 supplement. Thus, any error in not mentioning or weighing the October 2018 opinion is harmless. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019).

## III.    Conclusion

The Court finds the ALJ's decision is supported by substantial evidence. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 7, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties